## Miller et al. v. Prater.

(Decided Jan. 15, 1937.)

W. C. GOBLE for appellants.

HILL & HOBSON for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On August 23, 1934, appellee filed a petition in the Floyd circuit court, making defendants therein, his daughter Eliza Miller and her husband German Miller. He asserted that he was the owner of a life estate in a described tract of land; that possession of his interest was being wrongfully withheld from him by the appellants, and had been so withheld since January, 1933. He asked the court to adjudge him entitled to possession of his interest, to quiet his title thereto, and award him $150 for its wrongful withholding.

Appellants answered, first denying the allegations of the petition and in a second paragraph pleading that on February 7, 1929, appellee for a valuable consideration had conveyed the tract to Eliza Miller. The deed is filed and it is recited therein as follows: "The grantor Thomas Prater hereby reserves the right of possession and control of said tract of land at all times during his life time."

Appellants pleaded that on February 1, 1932, appellee indorsed on the margin of the page on which the deed was recorded the following: "This is to certify that I, Thomas Prater, hereby relinquish all right or claim I have in this deed. Thomas (X) Prater, his mark. Attest: A. B. Meade, Clerk, by N. B. Martin, D. C. Attest to mark, Eugene Allen." It is asserted that by

said indorsement appellee "surrendered" to appellants. "all interests he held in said tract of land and these defendants are now the absolute owners and entitled to peaceful possession thereof."

A reading of the second paragraph (to which appellee demurred) fails to show any attempt to assert consideration for the alleged conveyance of appellee's interest. Three of the requisites of a valid conveyance are missing here: There is no grantee; there is no description of the fee granted, and a total lack of consideration. Appellee had an interest which could have been conveyed as any other interest in real estate may be conveyed. Ky. Stats. secs. 490 and 2341. We have held that a writing, similar to the one in question, "possesses no force" as a conveyance. Garnett v. Garnett's Lessee, 7 T. B. Mon. 545, favorably cited in Huntsman v. Bryant, 196 Ky. 312, 244 S. W. 701.

Appellants later filed an amended answer which they also styled counterclaim, wherein they asserted that upon the execution of the alleged release they took immediate possession of the tract of land, claiming it as their own, without objection by appellee; that from the time they took possession up to the date the suit was filed they put valuable and lasting improvements upon the land. These improvements are described as fencing and fencing materials, to the cost of $64.30; clearing of land necessary for cultivation, $126; roofing a corncrib, $5; total cost of improvements, $194.50. They say these improvements were made with the understanding that appellee was not claiming any interest in the land, and that they were the owners thereof. It was prayed, in case the court should hold appellants not to be the owners in fee, that they be awarded the above named sum by way of damages.

One joint tenant, tenant in common, or coparcener may not have a personal judgment against the other for improvements made on the common property, and as indicated, the release above mentioned not conveying the interest of appellee, these parties are joint tenants. There is no allegation that the improvements were made under specific agreement for appellee to pay. The alleged damage might have been, in a proper case applied to offset rents. Suesskind et al. v. Michael Hardware Company, 223 Ky. 59, 2 S. W. (2d) 1073; Mastin v. Mas-

tin's Adm'r, 243 Ky. 830, 50 S. W. (2d) 77. It is true that there was pleaded a gesture toward paying rent, but it was not couched in such language as to amount to a tender or an agreement to pay.

In Sullivan v. Sullivan, 179 Ky. 686, 689, 201 S. W. 24, we held that if the improver exclusively occupies the land at the time of the reparation, he is not entitled to a lien for repairs made by him for his own use and benefit, without accounting for rents. If a joint owner occupies the land and in good faith claims title to the whole and improves it, thereby increasing its vendible value, he is entitled to assert a lien to the extent, not of the cost of the improvements, but only the increased vendible value. See Mastin v. Mastin's Adm'r, supra, and cases cited therein.

In this amended answer and counterclaim it was also pleaded that at the time of the execution of the release appellee had a granddaughter (child of Mandy Davis) who was very ill and in need of hospital and medical treatment; that her mother (daughter of appellee) was not possessed of funds sufficient for the purpose of affording the required treatment. This being the case, it is said that appellee was to release his interest in the tract of land he had theretofore deeded to Mandy Davis, so that she could raise the needed funds. This daughter failed to raise the money. Still later a second amended answer was filed in which appellants reiterated the allegations of the first amended answer with relation to the grandchild's illness, need of medical attention, and the parent's lack of funds. It was then asserted that due to the existing situation it was agreed between appellants and appellee that, upon the release of the "homestead right" of appellee in the tract of land in question, the appellants were to mortgage the land, "borrow the money" for the child's medical expenses, and that in furtherance of the agreement appellee did make the release and "the said Eliza Miller and German Miller did secure the money necessary for the medical treatment" and furnished same.

Explaining the method of release, they said that all parties were ignorant of the proper procedure whereby the life estate of appellee could or should be legally released, but they all thought that the method adopted "covered the matter fully"; that appellee thought he

had properly made a release, "and the said Eliza Miller thought he had done so." So they say that, since they have performed their part of the contract, and if the court be of the opinion that the release did not have the effect of divesting appellee of title to his interest, the court should require specific performance.

There were demurrers to the second paragraph of the original and to the first and second amended answers and counterclaims. Upon submission on the pleadings and the demurrers the court sustained all the demurrers; the appellants refused to plead further and the court, without dismissing the defensive pleadings, adjudged appellee to be the owner of the legal title to an estate for life in the tract of land in question, directed a writ of possession to issue in ten days, and in the same order appellee by his own motion dismissed so much of his petition as sought recovery of $150 for wrongful withholding of his alleged interest.

It is not shown in any of the pleadings how much money was agreed to be or was raised and turned over to the use of the grandchild, nor is anything pleaded which would indicate the worth of appellee's life interest in the tract of land, save and except his allegation that the rental value was $75 per year. It may be, or may have been, that the sum advanced at the alleged behest of the appellee to his grandchild did not equal the value of a year's rental; it may have equaled or exceeded it. However, as we read the allegations of the three answers filed by appellants, it seems quite clear that the intent of all the parties was to join efforts in raising sufficient funds to assist the child. In the second amended answer it is alleged that, in order to assist Mandy Davis in raising the money, appellant was to release his interest in the land. There was nothing pleaded that would indicate purpose or intention to convey. It is readily gathered from the pleadings that it was the intention of the parties to do what they thought was necessary to be done, so that Mandy Davis might negotiate a loan. It is alleged that he did make the release, but Mrs. Davis failed to raise the money.

With regard to the transaction between Eliza Miller and appellee the same situation appears, since it is pleaded that, after Mrs. Davis failed in her efforts "to further assist in securing this money the release was

made on Eliza Miller's interest (evidently error), and she and her husband were the ones that raised the money for the hospital fees, and furnished same to Mrs. Davis; that the plaintiff herein knew all the facts and circumstances,'' and made the release of his claim in Mrs. Miller's property for this purpose. Nowhere is it intimated by pleading that appellee intended to divest himself of title, nor is it charged that appellants believed such to be the agreement. The release was, as far as the pleadings show, made for the purpose of allowing Mrs. Miller to mortgage the property to secure the money. She did not however, mortgage the property, or if she did it is not so alleged. In any event whether she did or not would make little or no difference.

It is clear from a review of the pleadings of appellees that they have failed to make out a case that would authorize the court below to direct specific performance of the alleged contract. The right of specific performance is not absolute, but rests in the sound judicial discretion of the chancellor. It is enforceable only in equity and must be and is based on equitable principles. The contract sought to be enforced must appear to be reasonable, and one such as should be in good conscience and substantial justice decreed. Jenkins v. Dawes, 183 Ky. 25, 207 S. W. 689; Sampson v. Cottongim, 249 Ky. 670, 61 S. W. (2d) 309; Williamson v. Ingram, 243 Ky. 749, 49 S. W. (2d) 1005.

The most that can be said of appellants' claim is that by and through the transaction, as exemplified by the pleadings, the intent and purpose of all parties was to encumber the interest of appellee with a lien to secure to them the payment of the money furnished to the child for hospital and medical service. Sutton v. Gibson, 119 Ky. 422, 84 S. W. 335, 27 Ky. Law Rep. 111; Jones on Liens (3d Ed.) 27-30. This question, however, is not presented for our determination, since the only relief sought (beyond the prayer for personal judgment for improvements) is the specific performance of the alleged contract.

With the foregoing expression of our views on the matters presented, we are of the opinion that the court properly sustained the demurrers to the various answers and counterclaims, and the judgment below is therefore affirmed.